The fourth and final case of the day, Tenor Capital Partners v. GunBroker.com, 22-13911. We've got Mr. Gosselin here for the appellant, Mr. Robbins here for the appellee. Mr. Gosselin, whenever you're ready. No hurry. I was just thinking about where we need to put an appellant, an appellee or petitioner. There's no way to sprinkle it on the outside, right? No. I'll do it over here. Here? Yes. Because it's one of the sides. No matter which side. And so that means the next one. That's crazy. It's crazy. Is that true? It's the SG's or just the SG's? Just the SG's. Not peons like me. I've never seen a sprinkler. I don't know. Good afternoon. Judge Branch, Judge Newsom, Judge Luck, if it may please the court. This appeal arises from the district court's misapplication of Georgia law in the context of a business transaction for financial advisory services in connection with a proposed ESOP transaction and potential related financing. The case was tried pursuant to the court's supplemental jurisdiction. After the court determined in summary judgment that the contract was void for violating the provisions of the Investment Advisors Act of 1940. Although the district court made that determination in considering gunbrokers' motion for directed verdict, which was based on Georgia law as articulated by the Georgia Supreme Court, that when a contract is void for violating public policy, public policy being here the claim for unjust enrichment will not lie. The district court denied that motion on premise of a Georgia Court of Appeals decision called Five Star Management, which interestingly enough in that case the court actually dismissed the unjust enrichment claim on summary judgment. But the court utilized that case to articulate its analysis that the investment advisory services, which formed the basis of the summary judgment grant voiding the contract, did not provide any aid to the unjust enrichment claim brought by Tenor Capital. Do you agree that as a general matter, not in this case, in general, Georgia law does allow an equitable claim? I know they sometimes will call it unjust enrichment, sometimes call it quantum merit, sometimes just call it equitable. Does it allow an equitable claim even though the underlying contract has been voided as against public policy or for some reason? The test that the court has... I'm not asking about the test. In general, does Georgia allow situations... In a limited context. Okay. So we got past it. It can happen. The question is when can it happen? So as I understand it, you agree that the test is that it can't happen where the claim is based on aid from the illegal conduct, right? If the test is if there's any aid from the illegal contract, then no, you cannot... Illegal conduct, meaning that... Illegal, yes. Okay. All right. And as I understand your argument here to us on the judgment as a matter of law issue, is that because at Stage 1 they did this illegal conduct, your client then authorized them to go to Stage 2, and as a result, any collection on Stage 2 was aided by the authorization. Is that your argument? That is correct, but there's an additional point on that. When Tenor Capital actually creates the financing memorandum that is presented to the financiers, if you look at that document, which is included in our appendix and, of course, is part of the record, it states in the summary of the transaction that Mr. Irvin is wanting to sell his stock, which is to sell to the ESOP transaction, to the ESOP trustee to do an ESOP transaction, and a part of that is based on the $180 million valuation, which is the work that was conducted in part in Stage 1. So it's not just that they were authorized, but the actual presentation to the lenders included and incorporated the investment advisory work that had been done in Stage 1. Can you show me where in your judgment as a matter of law argument that you just made the point about what was in the finance memo that went to the banks in order to solicit information from them? The motions did not specifically include that statement. It directed the court that the document, the financing memorandum, was a document that showed that the agency Can you show me where in your brief to us, what you just articulated to me, that the memorandum that went to the banks at Stage 2 included the valuation, which was part of the aid, which was part of what aided from the illegal conduct? The brief does not include that specific sentence. It just points to the court that this document, the letter agreement, the November PowerPoint presentation, the financing memorandum, and the MGG term sheet, all evidence that there was aid from the… If that argument wasn't made to the district court as part of the judgment as a matter of law question, and it wasn't made to hear in the initial brief, how is the district court then to rule for your client on the critical issue of whether there was evidence in aid from the illegal part of the contract for the underlying claim, which dealt with getting financing for what ultimately happened for gunbrokers? Well, the court in and of itself, if you look at the court's opinion, concluded that Stage 1 may have helped cause Stage to occur. So the district court… And by the way, I agree with the district court, and I agree with you, that there's no way there would have been authorization but for what happened there. But I think to me, at least, that's separate from what the claim is, because the test is in aid of the claim. And the claim here is not, has anything to do with the author. They're not trying to collect for the authorization or anything that happened before authorization. They're trying to collect for pounding the pavement by going from up and down Wall Street, from Bank X to Bank Y to Bank Z, to try to get financing for this deal. And that, it seems to me, was not aided by anything to do with what happened at Stage 1 or the authorization for Stage 1. But your point that you raised here seems to be a lot closer to the mark. Well, first, I disagree with you, because in order to have an unjust enrichment claim, you have to have an expectation that you're going to be compensated. Right. That expectation only arises from the authorization. First of all, if you look at it. Well, I feel like, doesn't the expectation arise from the letter agreement? The letter agreement says that you're going to get 1.5 percent of financing that you collect within 12 years, based on anyone we introduce you to, right? The letter agreement specifically states in the first, in the Part 1, second paragraph, that you cannot proceed to Stage 2 without express authorization. Without a doubt. There's no way. I understand that. But if the claim is, and remember, they're not collecting on the contract. They're collecting under what was equitably theirs. And, in fact, the jury awarded them more than they were entitled to under the contract. So it's not about what the contract says is allowed. What the key is, if the claim is solely based on we traipsed up and down Wall Street to try to get financing and did, and we should be compensated for that, and they knew we were going to be compensated for that, that seems to be separate and apart from whether we were authorized to do that or not. I disagree, because they would not have had that expectation that doing that work would result in compensation without having received that authorization from Mr. Irvin. And even before the contract was signed, prior to that, there's evidence in the record of Mr. Butler communicating with Mr. Irvin, which specifically states we can't go forward to Stage 2 without you authorizing us. In fact, it even says if after Stage 1 you want to renegotiate our fees, that would be something that we could do. So they have no, they can't get to any expectation of compensation without the authorization. But I also would say the test is any aid, and Georgia law is not clear on what quantum constitutes any aid. But I would argue that to the extent this exists. But how did the authorization aid them in traipsing up and down Wall Street? In other words, it authorized them to do it, it allowed them to do it, but how did it aid them in actually doing the thing that they seek to collect on, which is going bank to bank and talking to CEO to CEO? It gives them credibility with the find that they're there to. What evidence in the record was there that we have got a letter of authorization from a gun broker that there's none? There's none. Right. You're relying solely on the letter agreement allowing Stage 2 to happen only if Stage 1 is met. I'm relying on the totality of the evidence that was presented in the record that the advice in Stage 1 provided aid to doing Stage 2. So the court decides this any aid test is what's supposed to occur. But then the court doesn't look at the documents and doesn't look at the evidence. What the court looks at is this issue of duration and compensation. Can I ask you about the jury instruction issue? Sure. If you want a jury instruction, what do the rules require you to do? Submit a written instruction. Right. Did you submit a written instruction regarding the any aid test? We did not submit a written instruction regarding the test. So the objection that you raise, the issue here that you raise here is we objected to two sentences in the Investor Act instruction which said that financing itself is not a violation and the contract here would not be void or that would not void what happened here. In other words, getting investment opportunities. And your objection to that is, well, you have to instruct on the any aid test. And then you come to us and say the district court erred by not instructing the jury on the any aid test. How is that a preserved objection where there was no submittal by you of here is the test we want you to give district court and we need you to give it? Jury instruction number 37, which the court did not give and which was probably objected to, articulates what the general Georgia rule is. And that's the instruction that should have been given. I don't believe the any aid test came into play at all. And it was not an issue that was ever argued by Tenor Capital. I just want to be clear. So you agree that the district court did not err or the error here is not about the failure to instruct on any aid. It's the failure to give instruction 37. It's failure to give instruction 37, and it's the failure that that final sentence does not articulate Georgia law. But it didn't. It's not an articulation of Georgia law. In fact, it didn't. The counsel, it didn't purport to. It purported to instruct on the Investor and the Investor Advisor Act. That instruction, that last sentence, that sentence says that therefore providing such services by an unregistered firm would not be legal. Under the Investor Advisor Act. But it directly negates the earlier discussion, the instruction which said the contract is void and stuff, it completely confuses the jury. Because it sends the message that the fact that the contract was declared void for violating public policy doesn't matter. And that's not Georgia law. What Georgia law says is that when the contract is void for being illegal, the only way it survives is if you can get through this exception that the party's asserting the claim. This is Tenor's burden of showing that there was no aid. This is not my client's burden to show that there was no aid. That the burden relies on Tenor Capital. If anyone had the duty to submit a jury instruction on the any aid test, it would have been Tenor Capital because they're the ones who need to travel under the exception. Okay, very well. Thank you so much. Let's hear from Mr. Robbins. Good morning, Your Honors. My name is Richard Robbins with Robbins Alloy Belafonte Littlefield. And with me is my partner, Matt Parrish. And the two of us were trial counsel in this case. I guess it's going back over a year or two for the trial. If I may say 20 seconds first, we've got nine enumeration of errors and numerous other legal issues raised below which were not appealed from. But we don't want to get lost in all that. The simplicity of the case, which is we provided services, which enriched the person who asked for the services by many millions of dollars. All right, counsel. You got your 20 seconds. Let me ask you some questions here. So I want to talk about the good faith claim. The opposing counsel argues that the Investor Advisor Act under federal law creates fiduciary duties. And the district court granted summary judgment, as I understand it, because there were no fiduciary duty owed between tenor and gun broker slash the principal of the company, right? That is correct. Okay. Does the Investor Advisor Act create fiduciary duties? Might have created limited fiduciary duties for investment advice. Right. And they got relief under the Investment Advisor Act for rescission. But that doesn't create fiduciary duties for the non-investment advice, which is out. That's my short answer. Okay. But if they sued for breach of fiduciary duty for the investment advice, and as I understand it, part of the allegations are that they misvalued, your client misvalued the company, how is that not a fiduciary duty that is owed under the Investor Advisor Act? It's only under the Investment Advisory Act for which they sought relief. They're not here or anything to do it. I understand. So maybe the gap that we're having is Georgia law says that you could sue for a breach of fiduciary duty. As I understand it, and please correct me if I'm wrong, it doesn't list where those fiduciary duties come from. Some come from common law. Some come from state law. And some are even created as a matter of federal law. So my question to you is, why was the district court not incorrect if two things are true? One, the Investor Advisor Act created fiduciary duties, and two, it was alleged a violation of fiduciary duties by misvaluing or giving incorrect valuation advice regarding the valuation of the company. I'm not aware of any authority extending that limited fiduciary duty for that stage, for the investment advice stage, which we agree with or disagree with, but we didn't appeal it. For the investment, I'm not aware of any law which extends that to separate services where there's a very different relationship. Are you aware of any Georgia case which has allowed a breach of fiduciary duty claim under state law based on a fiduciary duty that's created as a matter of federal law? I can't speak to that. I don't recall that, but I can. To be candid with the court, this is not an issue that has come up before in this case. I thought we researched every single issue that was— This issue was clearly raised in the briefing of the case, which was the district court ruled no fiduciary duties. They argued fiduciary duties were created by three things. Counsel, let me finish my statement. First, a fiduciary duty was created based on an attorney-client relationship because the principle of tenor was an attorney. Second, documents were entitled attorney-client relationship. For various reasons, I don't think those are persuasive. And the third thing was that a fiduciary duty was created under the Investment Advisory Act. That's directly from the brief. So my question to you is if that's correct, if it's correct that fiduciary duties are created under the Investment Advisory Act and Georgia law allows you to sue for fiduciary duties created under federal law, then wouldn't the district court have been wrong for granting summary judgment on that basis? There's nothing that I've seen, and I know that argument in their brief, but there's nothing I certainly have seen or that they even cited in their cases which extended it to a quantum meroid claim, which is the only one here. Their cases only deal with a claim under a particular section, 2062, I believe. That's the only one that's created allegedly under the—well, I won't say allegedly. The 2062 claim under the Investment Advisory Act. But they didn't cite anything, and we didn't cite anything. Why would that extend to a wholly separate quantum meroid claim? All right. My next set of questions is this. So your opposing counsel, I started off by asking them, and they started, I think, rightly with the unjust enrichment claim. And they've said that there's two main things they're relying on to show that judgment as a matter of law should not have or should have been granted here. One is the authorization, and we ran that down. I don't want to talk too much about that. The other, though, is they make mention of the financing document. They mention the exhibit number. I believe it was 108, but I don't remember it off the top of my head, that they introduced into evidence and that exhibit stated or dealt with the valuation— that exhibit included valuation information that was collected as part of Stage 1. And so their argument is that getting financing was aided in some way by what happened at Stage 1, which everyone agrees at this point was a violation of the Investor Advisory Act. My answer to two points. This was certainly, as Your Honor pointed out, this was not raised below. The trial court squarely held that there was no investment advice involved on Stage 2. That was a stand-alone financing raise. There's absolutely no law of any kind suggesting that a finance raise is within the parameters of the Investment Advisory Act. Well, I think that's clearly true. But the question under Georgia law, as I understand it, and it seems like you all both agree at this point, is that if some aid is given, some aid is given from the illegal conduct to the conduct for which you are seeking unjust enrichment damages, then the unjust enrichment claim is infected by the illegal conduct. That seems to be what Five Star Management is saying. That was going to be my second comment. What Five Star says, and they continue to gloss over this, or misstate it, quite frankly, and Judge Thrash, in his 90 pages of opinions in this case, caught them on. He said the Five Star case is actually the test for determining whether demand connected with an illegal transaction is capable of enforcement at law is whether plaintiff requires any aid from the illegal transaction to establish his case. Right. At our point, as it was at trial and as Judge Thrash held, agreement is gone. Okay? All we're looking at is we're seeking financing, and the fact we may have mentioned something about ESOP or valuations or whatever, and there's no suggestion. Frankly, I don't know how valuation is in investment advice, but putting that aside. If the tool that was used in order to solicit the banks, because as I understand it, it's not as if you go actually knocking on doors like the old days. You send out prospectuses and letters to the banks, and if someone hooks on the fish, then you sort of work on them a little bit. So if the letters that are sent to the banks included information that was gathered illegally under the Investor Advisor Act, then isn't some aid being rendering to the solicitation for what you were seeking compensation for? I don't think that gathering information, what you just said, illegally gathered, gathering information is investment advice, Your Honor. Well, the valuation part. You know, do we know something about the company before we go raising money? Yes, we knew something. Does that investment advice? No. That has never been argued, quite frankly, and nor was it— But the valuation piece. So what he's saying is part of what is illegal under the Investor Advisor Act, I believe it's explicit, is valuing companies. That was the illegal conduct, and that's the conduct that made its way into the letter that then went to solicit, which you are now seeking compensation for. Well, again, I haven't gone through all of the materials, but if we come up with some kind of valuation at some point and we're not using that advice to them, I mean, we're using a—maybe we use a number. The lenders, which there is no question, the lenders rarely, if ever, look at a borrower's valuation. I mean, they do very, very sophisticated valuations, which they're looking at. If so, that would have been something in passing for which there is no relevance. Was there a mention of the ESOP or something in the ESOP during the financing process? Yes. But if you extended that far than the NEA test, the exceptions would be rendered useless. If you just said, oh, did you mention an ESOP or did you mention something like that. It was not used. It was not argued that it was used below. There was no appeal from the ruling of the court, very specific, that there was no investment advice in Stage 2. They didn't appeal from that. Everything that you just said was not appealed from. Had they appealed from that, I would certainly have been much stronger about that because the fact is there's no law that I'm aware of ever, nor did they cite any, that a financing raise constitutes investment advice. For that matter, there was no law which Judge Thrash recognized that ESOP advice is covered by the Investment Advisory Act. We didn't appeal that, though. I will acknowledge we didn't appeal because the last thing we want is another jury trial. It seems to me, and correct me if I'm wrong, that what you're arguing, and I think this dovetails with what you've argued in your briefs, that in virtually every quantum merit suit involving a void agreement, the services provided can be linked back to the void agreement in some way. But if you say that any linkage is going to destroy the quantum merit suit, it would render the NEA test null and void. You said it much better than I did, Judge Branch. That is our point. And if you look at remediation case, the RP Jennings case that we cite, which did go our way, that proves it precisely, which is you have an illegal part, okay, but then you have a part that's not in itself illegal. And everybody agrees here that a finance raise is not in itself illegal. Well, you know, the Investment Advisory Act, and in those cases, the court held, well, wait a minute, you know, this part is illegal, you know, this is void, but we can sever the part that's not illegal. There's always going to be some connection of some type, but are they so integral that you can't separate them? Here, Judge Branch went through the same analysis as these other cases in which the court said, yes, these are severable, which makes sense, because what on earth does the Investment Advisory Act have to do with services that aren't covered by the investment? Let me ask you a hypothetical. Let's suppose that the situation unfolded just exactly as it has in this case, stage one, stage two, but instead, gun broker doesn't use the investor that your client found as a result of this investor search. Are we here today? No. I mean, the concept in the agreement and the understanding was if you use our financing for an ESOP, you owe us money, $5 million, and if you decide to jettison the ESOP and just go for the money and have a standalone loan, you still owe us money because this happens, and that's exactly what gun broker did here, and they were, and our view was, you know, we expect you to get paid for our services. We're not banging our heads against the wall for three months for nothing. You expect you to pay us. You lead us to believe we're going to be paid, and five days after you sign the letter of intent with the lender that we brought to the table, you say, oh, no, we're not paying you anything or we're not going to pay you as much, and when we say no, we worked our rears off. Then they say, well, well, there's a securities violation there. We're not paying you under that. Georgia policy is very clear, and there's nothing unsettling about it, that you can recover quantum service under quantum merit even if there's a part of the written contract that's illegal or void. That's Georgia law, and that makes a lot of sense. Someone can't take services that are not illegal and then not pay for them. It's really that's basic in the Georgia law. It's not unsettled. The only case they cite, the Sap case for saying it's unsettled, was a 1913 Supreme Court case. Well, it's been 90 years of law since, and one of the cases we rely on, cert was denied in it. It hasn't seemed to be of, quite frankly, enormous interest to the Supreme Court or any indication by the Supreme Court that the law is unsettled in this area. All right, very well. I see your time has expired. Thank you so much. Let's hear a rebuttal. I actually, did I use up every second? You did, every last second. I wish I had planned that. Time flies. Thank you. The importance of the breach of fiduciary duty claim, which was dismissed on summary judgment and the court should have been looking at the evidence most favorable for a gun broker, is that the rescission claim for the contract does not provide for the recovery of actual damages. You need to pursue a fiduciary duty claim in order to be able to recover that. My client incurred $800,000 in damages. Counsel, do you know of any Georgia case? Sorry. Counsel, do you know of any Georgia case that has allowed a breach of fiduciary duty claim under Georgia common law based on a fiduciary duty that's created by Federal statutory law for which you do not have a remedy or cause of action under Federal law? I believe those cases exist. I cannot give you a site right now, but I would be happy to submit supplemental authority if the court wishes that. Let me just ask a follow-up question. I may have been missing something, but is this an argument, the breach of fiduciary duty issue, is this an argument that you put before the district court? Did you say that Section 206 of the Investment Advisor Act creates fiduciary duty that we can enforce pursuant to Georgia law? Yes, we did. And we also had, additional to that, the fact that Mr. Butler held himself out as a lawyer and presented documents to my client that said attorney-client privilege, that those were other bases for the fiduciary duty claim. The district court's only ruling in throwing out the fiduciary duty claim was the clause in the agreement, which the court had declared void, that disclaimed any existence of a fiduciary duty. How under your unjust enrichment theory, so Judge Branch asked a series of questions of your opposing counsel about what the nature of the SUNAID test has to be, in other words, what the linkage has to be in order to make it, to taint the unjust enrichment with the illegal conduct. At some point, it becomes too attenuated. So it can't be a but-for test. It has to be some use of it. Go to the remediation services case, which is a case that between you guys, that both you guys have cited and the district court discussed. Where in there could we not say that at least SUNAID was rendered based on the principal relationship or the sort of the incestuous relationship, which caused the contract to be voided there, to then lead into what ultimately became of the services, the dredging services that were provided? Well, what I think the Georgia Court of Appeals analysis is, it goes to what is the essence of the contract. In the cases that have said services get to go forward, you're looking at dredging services. Dredging services are not inherently illegal. You're looking at running a tavern slash restaurant, that running a restaurant is not inherently illegal. But cases where, like this one, where providing advice, financial advice, relating to an ESOP transaction incorporates. I don't see how that could be right. In other words, if what you're saying is true, then that means Five Star would have been decided on that basis and not on the SUNAID basis. So in Five Star, the court there didn't say an agent contract is inherently unlawful. What the court there said is, we can't disconnect for the NEA test, the services between failure to register as an agent and him actually providing agent services. In other words, there was perfect identity between what they were seeking collection on and what was illegal. But Five Star didn't say that the failure to register as an agent made the contract inherently illegal, like a contract to sell heroin would be, or a contract to enter into a gambling relationship would be. Well, first of all, Five Star was an oral contract. There was no written documents. Right, but that doesn't matter for our purposes. Second of all, the plaintiff in that case did try to argue that there were services that did not require you to be registered, but the court decided you cannot. Right, but counsel, on the point that you're discussing, which is that the question is the essence of the contract, there was nothing about the essence of the Five Star oral contract that made it illegal. What made it illegal was the failure to register and go through the hoops under Mississippi law. And because the services that were claimed under quantum merit were the same as those that were illegal, that's why the court ultimately reversed the district court. That statute was designed to present student-athletes, and therefore you had to be licensed in order to be doing anything for student-athletes. You have to be licensed under the federal— you have to be registered under the Federal Investment Advisory Act to be providing— Right, but there's nothing— counsel, there's nothing inherently illegal about giving investment advice. What's illegal about it is not jumping through the hoops of registering with the SEC if you meet certain qualifications. That's under the— Providing the disclosures and other things that inherent being an investment advisor. The J.R. Construction case was another one where you're an electric subcontractor, did not have the license. You couldn't parse through the services to say this— he did these things that didn't require a license, but these others. You look at the essence of the contract, and frankly, I think most of the time this NEA test has been used for arbitration clause, confidentiality clauses, different things, this parsing that happened with the district court here. And if you have any doubt, I think you should grant our motion to certify these questions and let the Georgia Supreme Court chime in and provide us all better guidance on what Georgia law is. All right, very well. Thank you so much. That case is submitted, and we will be in recess until tomorrow morning at 9 a.m. All rise. Thank you.